# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| CECIL FLUKER,<br>c/o David B. Malik<br>8437 Mayfield Road<br>Chesterland, Ohio 44026 | ) CASE NO:<br>)<br>)<br>)<br>) **JUDGE:**<br>) |
| Plaintiff<br>v. | )<br>)<br>)<br>) **COMPLAINT** |
| CUYAHOGA COUNTY<br>The Justice Center<br>1219 Ontario Street<br>Cleveland, Ohio 44113 | )<br>) **(Jury Demand Endorsed Herein)**<br>)<br>)<br>) |
| and | )<br>) |
| ARMOND BUDISH<br>Cuyahoga County Executive<br>c/o Department of Law<br>2079 E. 9th St.<br>Cleveland, Ohio 44115 | )<br>)<br>)<br>)<br>) |
| In his Official Capacity as Cuyahoga County<br>Executive | )<br>)<br>) |
| and | )<br>) |
| KENNETH V. MILLS,<br>Cuyahoga County Sheriff<br>1215 W 3rd Street<br>Cleveland, Ohio 44113 | )<br>)<br>)<br>)<br>) |
| In his Official Capacity as Director, Regional<br>Corrections Cuyahoga County Sheriff's<br>Department and Individually. | )<br>)<br>) |
| and | )<br>) |
| ERIC J. IVEY<br>Cuyahoga County Sheriff<br>1215 W 3rd Street | )<br>)<br>) |

1

Cleveland, Ohio 44113                              )
                                                   )
In his Official Capacity as Assistant Warden       )
of the Cuyahoga County Corrections Center          )
and Individually                                   )
                                                   )
    and                                            )
                                                   )
CLIFFORD PINKNEY                                   )
Cuyahoga County Sheriff                            )
1215 W 3rd Street                                  )
Cleveland, Ohio 44113                              )
                                                   )
In his Official Capacity as Cuyahoga County        )
Sheriff and Individually                           )
                                                   )
    and                                            )
                                                   )
JOHN DOES 1-5                                      )
c/o Cuyahoga County Department of Law              )
2079 E. 9th St.                                    )
Cleveland, Ohio 44115                              )
                                                   )

                    Defendants.

## I.  INTRODUCTION

1. This lawsuit seeks fair and reasonable compensation for Cecil Fluker due to violations of his constitutional rights and state law rights.  This lawsuit challenges the conditions of the Cuyahoga County Corrections Center while Fluker was incarcerated. The conditions he experienced are consistent with the recent U.S. Marshal's recent documentation of inhumane conditions inside of the Cuyahoga County Correction Center during and prior to 2018. (Attached hereto as Exhibit 1)

2. *Moral rights as well as practical and applied ethics are incorporated and embedded within a public official's fiduciary duties, within the Constitution, state laws and ideally, public policies.*

3.  Examining each Defendant's/fiduciary's moral commitment and practical ethical commitment while employed in the jail, specifically to pre-trial detainees like Cecil Fluker, is an additional objective of this lawsuit.

## II.  JURISDICTION

4.  Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. Venue is proper in this division.

## III. PARTIES

5.  Plaintiff Cecil Fluker is an African American male who was incarcerated in the Cuyahoga County Corrections Center in August of 2017.

6.  Defendant Cuyahoga County is a unit of local government organized under the laws of the State of Ohio.  Cuyahoga County is a "person" under 42 USC 1983 and at all times relevant to this case acted under color of law.  Cuyahoga County is a final policymaker.

7.  Cuyahoga County via its Executive Office, executed an agreement with the Cuyahoga County Council, Cuyahoga County Prosecutors Office and Cuyahoga County Department of Law.  This document in its final version is officially entitled AGREEMENT GOVERNING THE DUTIES, POWERS AND RESPONSIBILITIES OF THE CUYAHOGA COUNTY PROSECUTORS OFFICE AND DEPARTMENT OF LAW (Attached hereto as Exhibit 2).  Each of these government agencies and their successors, had a fiduciary duty to the incarcerated public, citizens of Cuyahoga County, while acting pursuant to the dictates of Cuyahoga County and Budish.

8.  Defendant Armond Budish is the present Cuyahoga County Executive. At all times relevant to the allegations in this Complaint, Budish was acting in his official capacity.

3

Budish inherited the 2013 AGREEMENT GOVERNING THE DUTIES POWERS AND RESPONSIBILITIES OF THE CUYAHOGA COUNTY PROSECUTORS OFFICE AND DEPARTMENT OF LAW.  As the present Cuyahoga County Executive, he was at all times, acting under color of law.  He is a "person" under 42 USC 1983.  As a final policymaker, Budish is responsible for the policies, practices, customs habits and procedures of the Cuyahoga County Corrections Center.  He is sued in his official capacity.

9. Defendant Kenneth Mills was at all times herein the Director, Regional Corrections Cuyahoga County Sheriff's Department.  This Defendant was at all times herein a jail Supervisor who had supervisory authority over the jail documents, operations, staff and inmates. As an employee of Cuyahoga County, this Defendant is sued in his official capacity.  He is also sued in his individual capacity.  Mills is a "person" under 42 USC 1983 and at all times relevant to this case acted under color of law.  Mills is a final policymaker.

10. Defendant Eric J. Ivey was at all times herein the Assistant Warden of the Cuyahoga County Corrections Center.  This Defendant was at all times herein a jail Supervisor who had supervisory authority over the jail documents, operations, staff and inmates. As an employee of Cuyahoga County, he is sued in his official capacity.  He is also sued in his individual capacity.  Ivey is a "person" under 42 USC 1983 and at all times relevant to this case acted under color of law.  Ivey is a final policymaker.

11. Defendant Sheriff Pinkney was at all times herein the Cuyahoga County Sheriff.  As the Sheriff, this Defendant was a supervising employee who had supervisory authority over jail documents, operations, staff and inmates.  As an employee he is sued in his official

4

capacity.  He is also sued in his individual capacity.  Pinkney is a "person" under 42 USC 1983 and at all times relevant to this case acted under color of law.  Pinkney is a final policymaker.

12. John Does are participating county and/or policy makers, supervisors and other employees. These Defendants are sued in their official and individual capacities.

## IV. FACTS

### A.  Jail Conditions While Cecil Fluker is Incarcerated In 2017

13. On or about August 30, 2017, the Plaintiff, Cecil Fluker was cited and arrested in Euclid, Ohio for his alleged violation of a protective order.

14. Shortly after being briefly held in the Euclid Jail, the Plaintiff was transferred to and incarcerated inside the Cuyahoga County Correctional Center. He was locked up because authorities had filed paperwork that indicated he violated a civil protection order and should be arrested.  So, at the time of his incarceration he was a pre-trial detainee.  That case was found to be meritless, dismissed and the Plaintiff was then eventually released from the Cuyahoga County Corrections Center.

15. While incarcerated in the Cuyahoga County Corrections Center, Plaintiff complained to Corrections Sergeant J. Toney that he felt sick from drinking water provided in the jail to inmates and/or from black mold growing on the food trays, which he inadvertently ingested.

16.  The water was determined by on site jail staff and others to be discolored.

17. It is unknown at this moment whether the jail or Justice Center pipes themselves were defective but if so, where the defect was located is simply unknown at this moment.  All that is certain is that discolored water was served to Cecil Fluker which caused and/or

contributed to him becoming ill while incarcerated in the Cuyahoga County Corrections Center.

18. Regardless of the origin of the defect, Defendants knew at all times pertinent herein that discolored county water would be consumed inside the Cuyahoga County Corrections Center by detainees and other inmates including Cecil Fluker.

19.  The Plaintiff consumed the water and he developed a rash on his body, severe nausea, and anxiety as a result of drinking the jail water.

20. Plaintiff consumed the water because he was thirsty and he needed to stay hydrated.

21. Cuyahoga County did not, as matter of policy, practice, custom or habit provide alternative forms of water to pre-trial detainees, such as bottled water. Yet at the time of Cecil Fluker's incarceration some county employees knew to bring their own bottled water as an alternative to drinking the jails water which they too recognized was discolored.

22. Plaintiff was, at his request, sent to the jail infirmary for vomiting and diarrhea after drinking the water and being exposed to black mold on food trays.  He was appropriately examined by a nurse and treated with medication.  The Plaintiff felt so ill from the water and black mold that he felt as if was going to die.

23. Plaintiff actually showed a Corrections Officer a sample of the discolored water he had collected that he had drank. The obviousness of the discolored water did not negate the necessity of the Plaintiff's continuous need to drink the water in order to stay hydrated while incarcerated.  Simply put, Plaintiff felt that if he did not drink the water, he would become dehydrated and that he had no alternative.  By not offering adequate substitute

hydration, such as clean non-discolored water, Defendant's demonstrated their deliberate indifference, wantonness and recklessness to the Plaintiff's safety and health.

24. A "Combination Report" was also created by Corrections Officer Pulphus. This report indicated: 'On Thursday September 28, 2017 at approximately 2100 hours Inmate 38 Cecil Fluker requested to see the doctor.  Fluker stated he drank some of the discolored water. All inmates were advised not to drink the water.  He's feeling sick.....' (The rest of the report is illegible) There is no evidence Fluker was told not to drink the water.

25. Plaintiff was later informed by corrections staff that some work had been done somewhere related to the water pipes and that this may have been the cause of the discolored water.

26. Corrections Officer Toney took a picture of a sample of the discolored water in order to document the source of Cecil Fluker's illness which included but was not limited to breaking out in a rash which caused him to continuously itch. On 9/28/17 this officer penned a report as well.

27. On September 29, 2017 the Plaintiff complained to the nurse that he was experiencing stomach pain, nausea, vomiting "black stuff" and had diarrhea as a result of the tainted water and mold on the food trays.

28. Plaintiff indicated that he had been sick for about a week and one half.

29. Plaintiff advised the nurse that the water was at first brown in color and then black in color. Plaintiff submitted a "kite" to this effect.

30. Plaintiff also informed jail staff that not only did there seem to be a problem with the water, there was "black mold" growing on his food trays and that he had inadvertently come into contact with and ingested the "black mold."

7

31. The food trays, were indeed known by Mills, Ivey and Pinkney to smell and contain "black mold."   This is in addition to their knowledge of the discolored water in the jail. Despite the mold, which was also detrimental to the health and safety of Cecil Fluker as a pre-trial detainee, the trays were kept in service by Cuyahoga County, Mills, Ivey and Pinkney for use by inmates but also to be handled by jail staff.

32. Upon information and belief, the trays were eventually discarded approximately a year later by jail employees in a county trash bin (December 2018 and January 2019).  No tests were ever performed on even one trays to determine the exact strain of the black mold. The evidence of black mold was simply blatantly discarded and then destroyed by Defendants.

33. Reports, giving direct written notice to Mills, Ivey and Pinkney about these trays and the black mold, were penned by at least one corrections staff member working for the county on official county forms known as CS 35s. Defendants are in possession of  such CS 35s which they secret from the public and which describe substandard jail conditions and substandard management either indirectly or directly.

34. According to Cecil Fluker's jail medical records, the Plaintiff's medical condition was treated with Zofran and Imodium orally in the jail medical clinic.  Plaintiff was charged at least $10 (ten dollars) while incarcerated for a condition created by Defendants.

35. At the time of his illness Cecil Fluker had filed written complaints with the jail.

36. Additional complaints about substandard jail conditions had also been made by multiple other detainees and inmates.

37. Upon information and belief Defendants and the County lawyers defending jail cases are in possession of additional CS 35s they know exist which depict a history of substandard

8

conditions in the jail relating to inadequate food service, employee misconduct and jail

managements deliberate cover-up of substandard conditions. The Defendant, Cuyahoga

County, has refused in public records requests and prior discovery requests in this and

other cases to disclose these CS 35s and this is a breach of their fiduciary duties to Cecil

Fluker.

38. It is unknown exactly when the trays that grew the black mold were originally purchased.

It is also unknown when the first report of black mold occurred.

39. Prior *pro se* lawsuits of inmates, previously filed, contain allegations of black mold

growing in the jail, thus giving notice to the county that dangerous black mold was

historically seen by detainees and other inmates inside the jail.

40. It is unknown whether black mold was *ever* professionally removed from inside the jail

or whether there was a jail maintenance schedule to remove black mold so that detainees

and other inmates could be protected from the harm it presented.

**B. Conditions Inside Cuyahoga County Corrections Center During 2017**

41. The facts and findings in the official U.S. Marshals' Quality Assurance Review for

Cuyahoga County Correctional Center (Attached as Exhibit 2), adopted by the Cuyahoga

County, are also adopted as if fully rewritten herein.

## V.  CLAIM I
### 42 U.S.C. §1983
### (BUDISH, PINKNEY, MILLS, IVEY, CUYAHOGA COUNTY)

42. The Plaintiff incorporates by reference the paragraphs above as if fully rewritten herein.

43. Each Defendant identified herein, has, under color of state law deprived Cecil Fluker of

clearly established rights, privileges and immunities secured by the Eighth and

Fourteenth Amendments to the United States Constitution.  These are rights which a reasonable person would have known.  The rights include but are not limited to, the right to due process of the law, and the right to be free from conduct which is cruel and unusual.  Each Defendant violated 42 USC 1983 in that defendant should not have been subjected Cecil Fluker to tainted water and trays containing black mold. This conduct constitutes deliberated indifference to the safety and health of the Plaintiff.  The conduct of each Defendant shocks thee conscience.

**VI.  CLAIM II**
**42 USC 1983**
**Monell Claims**
**(CUYAHOGA COUNTY, BUDISH AND JOHN DOES 1-5)**

44. Plaintiff realleges the above paragraphs as if fully rewritten herein.

**45.** The Defendant Cuyahoga County's policies, practices, customs and habits relating to the conditions of confinement of pre-trial detainees and other inmates were a moving force behind the Eighth and Fourteenth Amendment violations to the constitutional rights of Cecil Fluker.

46. Defendant Cuyahoga County failed to institute adequate county policies and procedures, in order to prevent and eliminate substandard jail conditions.

47. Cuyahoga County, Budish and John Does 1-5, acted unconstitutionally and were final policy makers. Each failed to conduct meaningful and adequate investigations into the substandard conditions in which Cecil Fluker, and historically, other detainees and other inmates were forced to repeatedly endure.  Thee conduct of these Defendants ratified the unconstitutional conduct and state law violations.

48. There is a pattern and practice by the Defendant Cuyahoga County, Budish, John Does 1-5, their agents and assigns of failing to train, inadequately supervise, failing to investigate, failing to discipline and allowing an epic breach of fiduciary duties which yielded the creation and perpetuation of substandard jail conditions directly detrimental to Cecil Fluker.

49. The inadequate training, supervision, failure to investigate, failure to discipline, ratification and the breaches of fiduciary duties, amounts to deliberate indifference to the rights of incarcerated individuals, including Cecil Fluker, when confined in the Cuyahoga County Corrections Center.

## VII. CLAIM III
## (NEGLIGENT, WILLFUL, WANTON, RECKLESS CONDUCT BY COUNTY, BUDISH, PINKNEY, IVEY, MILLS and JOHN DOES 1-5)

50. The Plaintiff incorporates by reference the paragraphs above as if fully rewritten herein.

51. Defendants Cuyahoga Count, Budish, Mills, Ivey, Pinkney and John Does 1-5 each owed a duty of reasonable care to Cecil Fluker.

52. Each Defendant has a duty to establish and enforce appropriate policies and procedures to maintain health and sanitation at the Cuyahoga County Corrections Center, including, but not limited to, ensuring a reasonably healthy jail culture, environment, living conditions, and safe food, food trays and water in the jail during Mr. Fluker's incarceration. Each was duty bound to at all times be aware of and prevent substandard jail conditions.

53. Each Defendant had or should have had actual and/or constructive knowledge and notice of the substandard conditions described herein related to the culture, environment, water, food and food trays through actual or constructive notice.

11

54. Each Defendant negligently, willfully, wantonly and recklessly decided to ignore and fail to act on these substandard conditions identified herein and they willfully, wantonly, recklessly ignored historical notices provided by staff, other detainees and inmate and by Cecil Fluker's verbal complaints, written complaint forms, kites and written CS 35s about these conditions.

55. Each Defendant has acted and has engaged in conduct which was negligent, willful, wanton, intentional and reckless toward the Plaintiff. This conduct contributed to a jail culture which allowed defective jail water piping, tainted water and black mold on food trays. Armed with this information, Defendants failed to protect the Plaintiff from the tainted water and black mold.

56. Each Defendant breached their duty of care to Cecil Fluker by failing to establish and enforce policies to protect the inmates at Cuyahoga County Corrections Center from unsafe and unsanitary conditions.

57. As a direct and proximate result of Defendants' breaches and misconduct, Cecil. Fluker suffered permanent physical and emotional pain and was even charged money for a wrong he did not commit. All of these conditions will continue indefinitely into the future.

### VIII. CLAIM IV
### NEGLIGENT, WILLFUL, WANTON AND RECKLESS BREACH OF FIDUCIARY DUTIES (CUYAHOGA COUNTY, BUDISH, MILLS, IVEY AND PINKNEY)

58. The Plaintiff incorporates by reference the paragraphs above as if fully rewritten herein.

59. Budish, Mills, Ivey, Pinkney and John Doe 1-5 at all times herein each held public office and each had a "fiduciary relationship" with that office, at the time Cecil Fluker

12

was incarcerated and injured.

60. The "fiduciary relationship" at all times herein also extended to the entire public.

61. Budish, Mills, Ivey, Pinkney and John Does 1-5 at all times herein was required by the parameters of their "fiduciary relationship", to act to protect members of the public who were incarcerated in the Cuyahoga County Corrections Center (including Cecil Fluker).

62. Because of the "fiduciary relationship" between and among these Defendants, the county and the incarcerated public, the law required particular behaviors be maintained in order to sustain and not breach the "fiduciary relationship" they accepted to uphold.

63. The "fiduciary relationship" described herein imposed a special confidence, trust, integrity and fidelity upon Budish, Mills. Ivey and Pinkney. The special confidence, trust, integrity and fidelity incurred upon each, required these Defendant's to exhibit behaviors consistent with that special confidence, trust, integrity and fidelity. These were also conditions of employment.

64. Each of these Defendants breached the duties of a fiduciary and violated the special confidence, trust, integrity and fidelity required of them by Cuyahoga County. Their breaches, as agents of Cuyahoga County, also extend to Cuyahoga County and therefore Cuyahoga County is in breach and at fault as well for the acts of their agents.

65. The breach of these duties were deliberate, negligent, willful, wanton, and/or reckless by these Defendants.

66. Injury to Cecil Fluker resulted as a proximate result of these breaches of fiduciary duties and the "fiduciary relationship".

## IX. CLAIM V

13

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY EACH DEFENDANT**

67. Plaintiff reiterates each paragraph above as if fully rewritten herein.

68.    Each Defendant in this case intended to cause detainee Cecil Fluker emotional distress.

69.    Each Defendant knew or should have known that the actions taken by them would result in serious emotional distress to detainee Cecil Fluker.

70.    Each Defendant's conduct was so extreme and outrageous as to go beyond all possible boundaries of decency and such that it could be considered as utterly intolerable in a civilized community.

71.    Each Defendants act, was a proximate cause of Cecil Fluker's psychological injuries.

72. The mental anguish suffered by Cecil Fluker was serious and of a nature that no reasonable man could be expected to endure it.

73.    This intentional infliction of emotional distress levied against Cecil Fluker was part of a pattern and practice designed promoted, ratified by and then covered up by each Defendant named herein.

## X.  DAMAGES

74. The Plaintiff incorporates by reference the paragraphs above as if fully rewritten herein.

75.    As a direct and proximate result of the Defendants' misconduct, Cecil Fluker suffered injuries including but not limited to a rash, nausea, vomiting, anxiety and fear.  The rash, nausea, and vomiting have subsided.  The anxiety and fear relating to his experience remains. Some of these injuries are permanent and some have resolved. Cecil Fluker will be required to obtain further treatment indefinitely into the future and

14

incur the costs associated with that necessary treatment.

WHEREFORE, Plaintiff respectfully demands that this Court:

A.    Award Plaintiff compensatory damages in an amount to be shown at trial;

B.    Award Plaintiff punitive damages (except against the County) in an amount to be

       shown at trial;

C.    Award Plaintiff reasonable attorneys' fees, costs and disbursements;

D.    Order Defendants to undergo a public ethics investigation by a special master

       pertaining their conduct involving the Cuyahoga County Corrections Center;

E.    Grant Plaintiff such additional relief as the Court deems equitable and just.

## XI. JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues.

Respectfully Submitted,

/s/ David B. Malik

David B. Malik (0023763)
Sara Gedeon (0085759)
Malik Law
8437 Mayfield Road, Suite #101
Chesterland, Ohio 44026
Email: dbm50@sbcglobal.net
Sgedeon1021@gmail.com
440.729.8260
440.490.1177

15