UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| CECIL FLUKER, | ) | CASE NO. 1:19-cv-0318 |
|---|---|---|
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CUYAHOGA COUNTY, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the Rule 12(b)(6) motion to dismiss for failure to state a claim filed by defendants Cuyahoga County, Armond Budish ("Budish"), Clifford Pinkney ("Pinkney"), Eric J. Ivey ("Ivey"), and Kenneth Mills ("Mills") (in his official capacity only)[1] (collectively, "the County"). (Doc. No. 9 ["Mot."].) Plaintiff Cecil Fluker ("Fluker") filed a memorandum in opposition (Doc. No. 16 ["Opp'n"][2]) and the County filed its reply (Doc. No. 20 ["Reply"]).[3] For the reasons set forth herein, the motion is granted in part and denied in part.

I.  BACKGROUND

On February 11, 2019, Fluker filed a complaint under 42 U.S.C. § 1983. He alleges that, on or about August 30, 2017, he was arrested for allegedly violating a protective order. (Doc. No.

---

[1] Budish is sued only in his official capacity as County Executive. Mills, Ivey, and Pinkney are all sued in both their official and individual capacities. The claims against Mills, Ivey, and Pinkney in their official capacities are claims against the County. Due to a potential conflict of interest between the County Prosecutor's Office and Mills (*see* Mot. at 101 n.1 [all page number references are to the page identification number generated by the Court's electronic docketing system]), Mills is separately represented with respect to the claims against him in his individual capacity. He has filed an answer to the complaint. (Doc. No. 18.)

[2] Plaintiff also filed a "Notice of Filing" (Doc. No. 17), purporting to supplement his opposition brief with three grievances apparently submitted by others. Doc. No. 17 and its attachments have not been considered because they are beyond the scope of materials permitted on a motion to dismiss.

[3] Plaintiff also filed a motion for leave to file a surreply to add to the record a transcript of public comments made during the June 25, 2019 Cuyahoga County Council meeting. (Doc. No. 21.) That motion is denied (without prejudice to renewal) as the materials sought to be added go beyond the scope of materials permitted on a motion to dismiss.

1, Complaint ["Compl."] ¶ 13.) He was detained in the Cuyahoga County Correctional Center ("CCCC") as a pretrial detainee, but the charges against him were dismissed and he was ultimately released. (*Id.* ¶ 14.)

Fluker alleges that, while he was detained in CCCC, he complained to a corrections officer that "he felt sick from drinking water provided in the jail to inmates and/or from black mold growing on the food trays, which he inadvertently ingested." (*Id.* ¶ 15.) "The water was determined by on site jail staff and others to be discolored." (*Id.* ¶ 16.) According to Fluker, "[d]efendants knew at all times pertinent herein that discolored county water would be consumed . . . by detainees and other inmates including [plaintiff]." (*Id.* ¶ 18.)

Fluker claims that "he developed a rash on his body, severe nausea, and anxiety as a result of drinking the jail water[,]" which he needed to do "to stay hydrated." (*Id.* ¶¶ 19–20.) The County "did not, as a matter of policy, practice, custom or habit provide alternative forms of water to pre-trial detainees, such as bottled water[,]" even though county employees "knew to bring their own bottled water as an alternative to drinking the jails [sic] water[.]" (*Id.* ¶ 21.)

At Fluker's request, he was "sent to the jail infirmary for vomiting and diarrhea after drinking the water and being exposed to black mold on food trays." (*Id.* ¶ 22.) "He was appropriately examined by a nurse and treated with medication." (*Id.*) Even so, "he felt as if he was going to die." (*Id.*)

Plaintiff claims he complained to corrections officers about the water, but that, "[b]y not offering adequate substitute hydration . . . [d]efendant's [sic] demonstrated their deliberate indifference, wantonness and recklessness to [plaintiff's] safety and health." (*Id.* ¶ 23.)

In addition, Fluker claims that, despite their knowledge of the black mold on the food trays, defendants kept the trays in service, and did not discard them until a year later. (*Id.* ¶¶ 31–32.)

2

Fluker alleges that each of the individual defendants were given "direct written notice . . . about these trays and the black mold" through written reports by staff members known as "CS 35s." (*Id.* ¶ 33.) Fluker claims that defendants possess these reports but will not release them to the public. (*Id*. ¶¶ 33, 37.)

Finally, Fluker alleges that the County was also placed on notice of these jail conditions by way of "[p]rior *pro se* lawsuits of inmates . . . contain[ing] allegations of black mold growing in the jail," as well as by the fact findings in a Quality Assurance Review contracted by the United States Marshal. (*Id.* ¶ 39.) Fluker has attached that report to his complaint (Doc. No. 1-2 ("QAR")), and "[t]he facts and findings in the [QAR] . . . are also adopted as if fully rewritten [in his complaint]." (Compl. ¶ 41.) The QAR assigned the facility an overall rating of "Unsatisfactory/At-Risk." (Doc. No. 1-2 ["QAR"] at 21.) Notably, the functional area of "Administration and Management" was given that same rating. (*Id*. at 44.)

## II.    DISCUSSION

### A.    Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts") (internal citation omitted).

3

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.  Analysis of Federal Claims**

Fluker sets forth two federal claims for relief: (1) a Section 1983 claim against all defendants alleging a deprivation of rights secured by the Eighth and Fourteenth Amendments, including his rights to due process, to be free from cruel and unusual conduct, and to be free from deliberate indifference to his safety and health (Compl. ¶ 43); and (2) a *Monell* claim against the County and Budish alleging that the County's policies, practices, customs and habits (or lack thereof) relating to conditions of confinement, as well as its failure to train, supervise, investigate and discipline, were a moving force behind the constitutional violations (*id.* ¶¶ 45–49).

**1.  Claims Against the County**

To the extent these two claims are pleaded against the County, as well as Budish, Pinkney, Ivey, and Mills in their official capacities, they are both *Monell* claims.[4] *Leach v. Shelby Cty.*

---

[4] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

*Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))).

"[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (citations and internal quotation marks omitted); *Monell*, 436 U.S. at 691 ("[The County can be sued under § 1983 where] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). The County "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "Official [County] policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

> To withstand the County's motion to dismiss under *Monell*, Fluker must
>
> adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."

*D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Fluker has not alleged any official policy or legislative enactment by the County that caused his claimed constitutional injuries. He relies on the other three theories of *Monell* liability: ratification, inadequate training/supervision, and a custom of tolerance.

5

Fluker claims violations under both the Eighth Amendment and the Fourteenth Amendment. (*See* Compl. ¶¶ 43, 45.) Since he was a pretrial detainee, not a convicted prisoner, "the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983) ("[T]he due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.")).

Each of the three *Monell* theories asserted by Fluker requires that he first establish some illegal or unconstitutional behavior (and only then needs to link it to the County). Fluker asserts broadly that this lawsuit "challenges the conditions of the [CCCC,]" (Compl. ¶ 1); but he focuses the allegations of his complaint on his exposure to discolored water and moldy food trays. The County does not seem to challenge whether these particular conditions, if true, would rise to the level of a Fourteenth Amendment violation.[5] At this juncture, the Court will assume, without yet deciding, that the § 1983 element of a constitutional violation has been met.

The Court will now turn to whether the complaint sufficiently alleges that the County was the "moving force" behind this presumed constitutional violation under any of the three *Monell* theories alleged.

---

[5] The County argues that Fluker "alleges only a single specific incident of alleged illegal activity—the one that caused [his] injuries (the appearance of dark drinking water and a food tray with black mold on it)." (Mot. at 110.) It argues that "[a] single incident alleging illegal activity is generally insufficient to survive a Rule 12(b)(6) motion to dismiss." (*Id.*) The Court reads this as a concession by the County that the two conditions complained of, if true, would amount to unconstitutional conditions if they were persistent. The County's position is that Fluker encountered these conditions only once, which, in its view, is insufficient to state a § 1983 claim.

*Ratification Theory*

The County argues that Fluker's complaint is insufficient under the pleading standards of *Twombly* and *Iqbal* because he "makes only the very barest of allegations that an official with final decision-making authority ratified illegal actions." (Mot. at 108 (citing Compl. ¶¶ 47, 73).) The County claims that a "conclusory assertion that all the defendants, through some unstated conduct collectively 'ratified' an unstated pattern and practice, is precisely the sort of threadbare recital of the elements of a claim that is insufficient to state a claim[.]" (*Id.*)

The County's argument lacks merit with respect to this *Monell* theory. The complaint alleges throughout that the County, through the four individual supervisory defendants,[6] was aware for some time of the substandard jail conditions and, in particular, of complaints about discolored water and moldy food trays, but failed to act—allegedly amounting to ratification of these conditions. At this juncture, on a motion to dismiss, the allegations of the complaint with respect to a ratification theory, taken as true and construed in a light most favorable to Fluker, are sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the complaint does not point to any specific policy, it alleges deficiencies in jail conditions that can only be attributed to jail policies (or lack thereof), which, in turn, can only be attributed to the entity with authority to institute and/or implement policies, that is, the County. *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (stating that a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)); *see also Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (stating that

---

[6] These are Budish (County Executive), Mills (CCCC Director), Ivey (CCCC Assistant Warden), and Pinkney (County Sheriff).

deliberate indifference extends to exposure to an unsafe condition, such as "demonstrably unsafe drinking water[,]" that threatens likely harm to inmates, even if no actual harm has yet occurred).

Fluker's complaint survives the motion to dismiss with respect to a *Monell* ratification theory.

### *Inadequate Training/Supervision Theory*

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. A plaintiff sets forth a *Monell* claim of inadequate training or supervision if he alleges "a municipality's failure to train its employees in a relevant respect [that] amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact. . . . Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388–89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Deliberate indifference "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Thus policymakers can be liable for failure to train only where a plaintiff demonstrates that the policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Id.* "A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities. . . ." *Id.* at 62 (quotation marks omitted).

The County argues that the only allegations of failure to train are contained in paragraphs 48 and 49 of the complaint, where Fluker states in conclusory fashion that the County had "a pattern and practice . . . of failing to train, inadequately supervise, failing to investigate, failing to

8

discipline and allowing an epic breach of fiduciary duties . . . [which] amounts to deliberate indifference to the rights of incarcerated individuals[.]" (Compl. ¶¶ 48–49.)

In opposition, Fluker argues that he sufficiently alleges that the County was at all times aware that inmates consumed discolored water and ate from moldy food trays while in CCCC. (Opp'n at 141.) Assuming for the purpose of this discussion that there was discolored water and moldy trays at CCCC, what plaintiff fails to show is how these conditions could have possibly been caused by a lack of training, lack of supervision, or lack of discipline. Put differently, plaintiff has not shown how better (or any) employee training, supervision, or discipline on the part of the County would have prevented or changed these conditions. Training, supervision, and/or discipline are not relevant issues with respect to discolored water and/or moldy food trays.

Plaintiff also argues that he alleges that CCCC employees "did not inform him of the dangers of the water." (*Id*.) Aside from the fact that a reasonable person would not need to be warned not to drink discolored water, even if CCCC employees had been explicitly trained to warn inmates and pretrial detainees not to drink discolored water, and even if they would have warned them, by plaintiff's own admission, there was no other alternative water source.[7] Therefore, as already noted, training (or supervision) of employees is not the issue when it comes to the two particular conditions of confinement about which Fluker complains. Nor could any employee be reasonably disciplined simply for working where there is allegedly nothing but discolored water to drink and/or moldy food trays from which to eat.

---

[7] Plaintiff seems to suggest that corrections officers and staff at CCCC should have offered bottled water and, by failing to do so, committed constitutional violations. (*See, e.g.*, Compl. ¶ 21.) But these officers and/or staff had no duty to supply bottled water at their own expense, even if, as alleged, they did bring bottled water for themselves.

To the extent the complaint attempts to assert any failure to train or supervise or discipline, defendants are entitled to dismissal.[8]

### *Custom of Tolerance Theory*

Where liability is based on an "inaction theory," a plaintiff must demonstrate: (1) a "clear and persistent pattern" of violation of federal rights; (2) "notice or constructive notice" to defendants; (3) defendants' "tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction;" and (4) that this custom was "the 'moving force,' or direct causal link for the constitutional deprivation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).

The County argues that Fluker's allegations are threadbare, doing no more than reciting the elements of the claim, without supplying any supporting factual allegations. (Mot. at 111.) It also argues that Fluker's allegations are based on a single instance where he drank discolored water and/or ate from a moldy tray, and that there are no allegations that he placed the County on prior notice. (*Id.*) Finally, the County asserts that Fluker "attempts to manufacture a *Monell* claim by making generalized allegations of inaction by [d]efendants but fails to allege any actual prior unconstitutional actions of the same type that would establish the clear and persistent pattern necessary to sustain a *Monell* claim on an inaction theory." (*Id.* at 112.)

In opposition, Fluker asserts that the County's motion on this issue is premature and that the complaint adequately pleads a claim of inaction. (Opp'n at 142.) He argues (and alleges) that multiple pro se litigants have filed lawsuits alleging the same deplorable conditions at CCCC and

---

[8] Allegations of the County's failure to investigate, in paragraphs 48 and 49 of the complaint, are viable under these facts and are implicated within the broader claim that the County had a policy of tolerating unconstitutional jail conditions with respect to the water and the food trays.

that his personal experience was consistent with the facts presented in the QAR that he attached to the complaint. (*Id.* at 142–43.)

The fact that Fluker has only his own experience to rely upon for the allegations of his complaint is certainly not unusual. Further, his own limited experiences do not negate the permissible inference that the particular conditions he alleges, taken as true, would neither have developed overnight nor have been a one-time occurrence.[9]

The allegations of the complaint with respect to the County's inaction, taken as true for purposes of a motion to dismiss, are sufficient under *Twombly* and *Iqbal* to withstand such a motion. To that extent, defendants' motion to dismiss must be denied.

Plaintiff's complaint is sufficient to withstand the County's (and the official capacity defendants') motion to dismiss *except* as to any claim relating to alleged failure to train and/or to discipline. The *Monell* claims against the County based on theories of ratification and/or custom of tolerance survive.

### 2. Individual Capacity Claims

In order to state a claim against Pinkney, Ivey and/or Mills in their individual capacities, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).

Pinkney and Ivey correctly argue that Fluker's complaint fails in this regard. As in *Frazier*, Fluker "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights." *Id.* For this reason, Pinkney and Ivey have moved to dismiss the § 1983 claims against them in their

---

[9] Although it is possible that discolored water could have been a passing occurrence based on something unusual (such as plumbing maintenance), the same is unlikely with respect to moldy food trays. These are questions of fact.

individual capacities. Fluker's opposition brief does not respond to this argument nor refute it in any way.

The Court concludes that Pinkney and Ivey are entitled to dismissal of the § 1983 claims against them in their individual capacities.

The complaint is equally deficient with respect to Mills, who is separately represented, but has neither joined in the motion to dismiss currently before the Court nor filed his own motion. However, on June 28, 2019, Mills filed an answer to the complaint wherein he raised several affirmative defenses, including, *inter alia*, failure to state a claim and that plaintiff's injuries, if any, did not result from actions by Mills in his individual capacity.

Under Fed. R. Civ. P. 15(a)(1)(B), once Mills filed his answer containing these affirmative defenses, Fluker could have filed an amended complaint "as a matter of course" within twenty-one (21) days; he did not do so, despite the fact that the other defendants' motion to dismiss (filed on April 15, 2019) quite clearly had placed him on notice of the deficiency of his complaint in this regard.

Given (1) the complete lack of any specific facts in the complaint that would support a § 1983 claim against Mills in his individual capacity, (2) the affirmative defenses raised by Mills, and (3) Fluker's failure to exercise his right to amend, it would be an exercise in futility to proceed against Mills in his individual capacity.

The Court *sua sponte* dismisses the sole federal claim pleaded against Mills. *See Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 262–63 (6th Cir. 2019) (finding that the district court did not abuse its discretion by *sua sponte* dismissing an insufficiently pleaded § 1983 claim where plaintiff failed to amend the complaint after the answer listed failure to state a claim as an affirmative defense).

## C. Supplemental Jurisdiction

In addition to his federal claims, Fluker asserts three state law claims: (3) negligent, willful, wanton, and reckless conduct; (4) negligent, willful, wanton and reckless breach of fiduciary duty; and (5) intentional infliction of emotional distress.

In his opposition brief, plaintiff states that "in the interest of moving forward with the Constitutional violations[,]" he will dismiss these three state law claims. (Opp'n at 144 (citing Fed. R. Civ. P. 41(a)(1)).)

In light of this statement, the third, fourth and fifth claims in the complaint are dismissed.

## III. CONCLUSION

For the reasons set forth herein, the motion to dismiss (Doc. No. 9) is granted in part. All individual capacity claims are dismissed. All state law claims are dismissed. The case will proceed on the *Monell* claims against the County on two theories: ratification and custom of tolerance with respect to Fluker's complaints regarding discolored water and moldy food trays while he was a pretrial detainee at CCCC.

**IT IS SO ORDERED**.

Dated: August 7, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**